IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MING HUI LU, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
|     v. | )     Case No. 1:15-cv-1100-GBL-MSN |
| | ) |
| LORETTA LYNCH, Attorney General, U.S. | ) |
| Department of Justice, | ) |
| | ) |
| JEH JOHNSON, Secretary, U.S. Department | ) |
| of Homeland Security, | ) |
| | ) |
| MICHAEL KORANSKY, Field Office | ) |
| Director Immigration and Customs | ) |
| Enforcement, | ) |
| | ) |
| MATTHEW MUNROE, Field Office Director | ) |
| Immigration and Customs Enforcement, | ) |
| | ) |
| JOHN R. KUPLINSKI, Superintendent, | ) |
| Virginia Peninsula Regional Jail, | ) |
| | ) |
| JAMES MADDOX, SDDO, Immigration and | ) |
| Customs Enforcement, | ) |
| | ) |
| DEPORTATION OFFICER GRITTY, | ) |
| Immigration and Customs Enforcement, | ) |
| | ) |
|     Respondents. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Respondents Loretta Lynch, Jeh Johnson, Michael Koransky, Matthew Munroe, James Maddox, David M. Griddle and John R. Kuplinski's ("Respondents") Motions for Summary Judgment (Docs. 23, 40). Petitioner challenges his continued detention by the Department of Homeland Security ("DHS") by way of a habeas corpus action brought pursuant to 28 U.S.C. § 2241. Respondents move for summary judgment

on the basis that Petitioner cannot satisfy his burden to demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future, and any putatively unreasonable delay in Petitioner's detention is a result of his own actions.

The issue before the Court is whether Petitioner Ming Hui Lu has established a genuine issue of material fact that his continued detention pending his removal violates due process under *Zadvydas v. Davis*, 533 U.S. 678 (2001) where Petitioner claims that there is "no significant likelihood of removal in the foreseeable future" because (a) United States Immigration and Customs Enforcement ("ICE") has not secured travel documents for his return to his native People's Republic of China ("PRC"), (b) Respondents are not "actively seeking Petitioner's removal," (c) ICE has failed to adhere to its internal procedures for conducting custody determinations, and (d) Petitioner's Motion to Reopen pending before the Second Circuit Court of Appeals triggers the Second Circuit's forbearance policy with the Government and therefore, prevents his removal in the foreseeable future.

The Court **GRANTS** Respondents' Motions for Summary Judgment because Petitioner has not established a genuine issue of material fact that his continued detention pending his removal violates due process under *Zadvydas*. Specifically, Petitioner is not able to satisfy his burden that there is there is "no significant likelihood of removal in the foreseeable future." Additionally, the record reflects that Petitioner's own actions have contributed significantly to his continued detention. Accordingly, the Court **DENIES** Petitioner's Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief, and hereby **DISMISSES** this action.

## I.   BACKGROUND[1]

Petitioner Ming Hui Lu is a native and citizen of the Peoples Republic of China ("PRC")
(Doc. 1).  He came to the United States without possessing valid entry documents on or about
March 31, 2000, allegedly to escape persecution in PRC (Docs. 1, 24-1).  Petitioner conceded his
removability from the United States but applied for relief from removal via asylum (Docs. 24,
24-1).  On February 13, 2001, an immigration judge denied Petitioner's application for asylum
(Docs. 1, 24).  On November 18, 2002, the Board of Immigration Appeals ("BIA") affirmed the
immigration judge's decision in a per curiam decision (Docs. 24, 24-1).  Petitioner moved the
BIA for reconsideration, but, on January 22, 2003, the BIA denied his request (Docs. 24, 24-3).
Petitioner was not immediately detained; his case was later transferred to the Fugitive Operations
Unit (Docs. 24, 24-4).

### A.   Petitioner's Conviction for Conspiracy in this Court

In 2011, the DHS learned that Petitioner was involved in attempts to obtain a fraudulent
permanent resident card and application for adjustment of status (Docs. 24, 24-4).  On June 14,
2012, Petitioner, along with twenty-three other individuals, was indicted in this Court for
conspiracy to commit immigration fraud (Doc. 24); *United States of America v. Li*, et al., Case
No. 1:12-cr-00258-12 (E.D. Va. June 11, 2012).

On November 13, 2014, Petitioner pleaded guilty to the conspiracy charge (Docs. 24, 24-
5).  According to the plea agreement, Petitioner acknowledged that his removal was
"presumptively mandatory."  *Id.*  Accordingly, Petitioner specifically agreed "not to contest any
removal proceedings brought against [him]" and to "consent to removal" as necessary.  *Id.*  He

---

[1] The background section is taken directly from Respondents' Motion for Summary Judgment (Doc. 24)
as Petitioner's Opposition does not include a specifically captioned section listing all material facts as to
which it is contended that there exists a genuine issue necessary to be litigated as is required by Local
Rule 56.

further waived "any and all rights to appeal, reopen, reconsider, or otherwise challenge" his removal. *Id.* Petitioner also agreed to waive his right to apply for "any and all forms of relief or protection" from removal, including, but not limited to, "(a) voluntary departure; (b) asylum; (c) withholding of deportation or removal; (d) cancellation of removal; (e) suspension of deportation; (f) adjustment of status; and (g) protection under Article 3 of the Convention against Torture." *Id.* Petitioner specifically acknowledged and stated that he "has not been persecuted in, and has no present fear of persecution in, China on account of race, religion, nationality, membership in a particular social group or political opinion" and that he "has not been tortured in, and has no present fear of torture in China." *Id.* The 2014 Plea Agreement was "binding for purposes of any future removal proceeding before the Board of Immigration Appeals, an immigration judge, or the DHS." *Id.*

On February 2, 2015, Petitioner was convicted and sentenced by this Court to time served with no supervised release (Doc. 24); *Li*, Case No. 1:12-cr-00258-12 (E.D. Va. Feb. 2, 2015), ECF No. 429. The next day, February 3, 2015, he was transferred to ICE custody because of the final order of removal from 2002 (Docs. 1, 24, 24-12). Petitioner is currently detained in the Virginia Peninsula Regional Jail in Williamsburg, Virginia (Docs. 1, 24).

**B.    May 8, 2015 Attempt to Remove Petitioner Back to PRC**

On February 12, 2015, and March 5, 2015, at ICE's direction, Petitioner completed necessary paperwork to obtain travel papers for removal back to the PRC (Docs. 1, 24, 24-6). Then, on or about March 9, 2015, ICE submitted this paperwork and other information to the PRC Embassy to formally request that travel papers be issued for Petitioner (Docs. 24, 24-6). On April 13, 2015, the PRC Embassy issued travel papers for Petitioner (Docs. 24, 24-4, 24-7).

With the necessary paperwork completed, ICE scheduled Petitioner for removal from the United States for May 8, 2015 (Docs. 24, 24-7).

A few days before Petitioner's ninetieth day in ICE custody, Petitioner, through his attorney, requested that ICE render a 90-day redetermination of whether continued detention was necessary (Docs. 1, 24). On May 1, 2015, ICE issued its decision to continue to detain Petitioner, explaining that there was a final order of removal against him and that he was a flight risk. *Id.*

On May 8, 2015, ICE attempted to remove Petitioner back to the PRC. The sequence of events that day are as follows:

a.       Deportation Officer Randall Martinez, who was assigned to oversee Petitioner's removal, arrived at an ICE office located near Fairfax, Virginia, to begin the removal process. He possessed the necessary papers for removal, including a copy of the final removal order and the travel documents obtained from the Embassy of the PRC (Docs. 24, 24-8).

b.       Deportation Officer Martinez and other ICE officers transferred Petitioner from his cell to the vehicle for transport to Washington Dulles International Airport ("Dulles") (Docs. 24, 24-8).

c.       Deportation Officer Brad Gittus, served a Form I-205 and Form I-294 on Petitioner. However, Petitioner refused to sign or affix his thumbprint on the forms. His refusal to do so was noted on the forms (Docs. 24, 24-8).

d.       Petitioner indicated to Deportation Officer Martinez that he did not want to go back to the PRC. Deportation Officer Martinez informed Petitioner that he was subject to a final removal order (Docs. 24, 24-8).

e. Upon arrival at Dulles, Deportation Officer Martinez removed the handcuffs from Petitioner and escorted him to a sanitized law-enforcement area, where security screened Petitioner for weapons and contraband. Deportation Officer Martinez then escorted Petitioner to his departure gate, where he would board a commercial flight scheduled to arrive in the PRC (Docs. 24, 24-8)

f. While Petitioner was waiting for his turn to board, he began asking other passengers to borrow their cell phone. Deportation Officer Martinez instructed Petitioner that he would not be able to make any calls from other individuals' cell phones. Petitioner told Deportation Officer Martinez that he was not getting on the flight and attempted to show Deportation Officer Martinez papers from his attorneys to demonstrate that he should not be removed (Docs. 24, 24-8).

g. Deportation Officer Martinez informed the flight attendant at the gate that Petitioner was being removed to the PRC and provided her with a copy of the travel document package. Petitioner was among the first to board the flight, and he proceeded through the jetway to the plane. Deportation Officer Martinez did not board the plane with Petitioner, but he waited near the jetway until the flight departed (Docs. 24, 24-8).

h. Minutes later, there was a commotion inside the jetway, and Petitioner came out. Deportation Officer Martinez ordered Petitioner to get back on the plane, but Petitioner refused. Because Petitioner would not comply, Deportation Officer Martinez handcuffed Petitioner's hands behind his back and brought him back into ICE custody (Docs. 24, 24-8).

i. Deportation Officer Martinez and another officer then transported Petitioner back to the detention facility. Once they arrived, security contractors patted down Petitioner and took him back into custody (Docs. 24, 24-8).

On May 22, 2015, Petitioner joined with two other individuals as named plaintiffs to file a class action complaint in the Southern District of New York (Doc. 24). They alleged that the manner in which ICE had attempted to remove them from the country violated various rights, asserting claims pursuant to the Federal Tort Claims Act, the Take Care Clause of Article II of the Constitution, the Administrative Procedure Act, a claim for false arrest, false imprisonment, and excessive force pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Fifth Amendment (Doc. 24); *see generally Vasquez v. United States*, 1:15cv3946 (S.D.N.Y. filed May 22, 2015).

Since the May 8, 2015, attempt, ICE has continued to prepare for Petitioner's eventual removal from the United States (Docs. 24, 24-4). On October 28, 2015, Deportation Officer Toya Smalls sent an e-mail request to the Supervisory Detention and Deportation Officer in charge requesting that the PRC Embassy re-issue a new travel document, and on November 5, 2015, she sent a follow-up regarding the travel document status. *Id.* Respondents contend that once a renewed travel document from the PRC is received, ICE will be able to arrange for Petitioner's removal within two to six weeks. *Id.*

## C.     January 19, 2016 Attempt to Remove Petitioner Back to PRC[2]

Following the unsuccessful first attempt to remove Petitioner and the expiration of the travel papers issued by the PRC Embassy for that attempt, Deportation Officer Smalls obtained renewed travel papers for Petitioner on December 23, 2015 (Docs. 47, 47-1). Accordingly, Petitioner was scheduled for removal on January 19, 2016, through Dulles (Docs. 47, 47-1, 47-3). Deportation Officer Jones was tasked with overseeing this second removal attempt (Docs.

---

[2] Information pertaining to Sections C and D of the Background Section are derived from the Federal Respondent's Response to Petitioner's "Letter to Judge Lee w/Attachments" ("Respondents' Supplemental Filing") (Doc. 47) filed on January 28, 2016, the day before the hearing on Respondents' Motions for Summary Judgment.

47, 47-2).  Immediately upon the ICE officers' commencement of the execution of Petitioner's removal at approximately 9:55 a.m. on January 19, 2016, Petitioner obstructed the ICE officers' efforts, by laying on the floor, locking his legs and gripping his hands tight together, and kicking the back passenger windows of the transport van that was set to take him to Dulles with his feet, among other things.  *Id.*  For Petitioner's safety, the ICE officers attempted to remove Petitioner from the transport van, at which point he began hitting his head against the transport van's back passenger window.  *Id.*  The ICE officers were eventually able to take Petitioner out of the transport van, and medical personnel were called to examine him for injuries.  *See id.*  Petitioner was then taken back to the Virginia Peninsula Regional Jail in Williamsburg, Virginia.  *Id.*

### D.      Petitioner's Motion to Reopen Before the Second Circuit Court of Appeals

On May 1, 2015, just prior to the PRC Embassy's issuance of travel papers for Petitioner, Petitioner filed an "Emergency Motion to Reopen" with the BIA ("Motion to Reopen") (Docs. 1, 24).  He relied on a 2013 State Department report, a 2014 House report, and various cases to argue that changed country conditions in the PRC warranted reopening his case (Docs. 1-8, 24).  He then argued that he was prejudiced by ineffective assistance of counsel during his original removal proceedings from roughly twelve years prior to the Motion to Reopen.  *See id.* at 8-16.

One week later, Petitioner also filed a Motion to Stay his removal with the BIA (Docs. 1, 24).  On June 5, 2015, the BIA denied both the Motion to Reopen and the Motion to Stay.  *Id.*  Petitioner immediately appealed the BIA Decision that denied the Motion to Reopen to the Second Circuit Court of Appeals.  *Id.*; *see also Lu v. Lynch* ("*Lu II*"), No. 15-1856 (2d Cir. filed June 8, 2015).

On January 19, 2016, hours after the second removal attempt, Petitioner filed a Motion to Stay before the Second Circuit Court of Appeals (Docs. 47, 47-2).

On January 28, 2016, the Second Circuit in *Lu II* denied Petitioner's petition for review ("PFR") and motion to stay. (Docs. 47, 47-6).

### D.   Petitioner's §2241 Petition Before this Court

On August 26, 2015, Petitioner filed a habeas corpus petition naming the following individuals as Respondents: Loretta Lynch, Attorney General, U.S. Department of Justice; Jeh Johnson, Secretary of the U.S. Department of Homeland Security; Michael Koransky, Field Office Director, Immigration and Customs Enforcement; Matthew Munroe, Field Office Director, Immigration and Customs Enforcement; John R. Kuplinski, Superintendent, Virginia Peninsula Regional Jail; James Maddox, Supervisory Detention and Deportation Officer, Immigration and Customs Enforcement; and "Deportation Officer Gritty," Immigration and Customs Enforcement seeking release from ICE custody pursuant to the United States Supreme Court's decision in *Zadvydas*. Respondents' Motions for Summary Judgment are now before the Court.

## II.    DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. 242-48. A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *JFK Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson,* 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B.    Analysis

The Court **GRANTS** Respondents' Motions for Summary Judgment because Petitioner has not established a genuine issue of material fact that his continued detention pending removal violates due process under *Zadvydas*. Specifically, Petitioner is not able to satisfy his burden that there is there is "no significant likelihood of removal in the foreseeable future." Additionally, the record reflects that Petitioner's own actions have contributed significantly to his continued detention.

Title 8 U.S.C. § 1231 governs the detention of aliens after administrative orders of removal have been entered. Once an alien's order of removal is final, the Attorney General is required to remove him or her from the United States within a 90–day "removal period." *See* 8

U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). This 90–day removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section § 1231(a)(2) requires DHS to detain aliens during this 90–day removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien"). However, if DHS does not remove the alien during this 90–day removal period, then § 1231(a)(6) authorizes DHS to thereafter release the alien on bond or to continue to detain the alien. Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

The Supreme Court held in *Zadvydas* that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal

from the United States." *Zadvydas*, 533 U.S. at 689.  To guide habeas courts, the Supreme Court

recognized six months as a presumptively reasonable period of post-removal-period detention.

*Id.* at 701. The Supreme Court held that, to state a claim under § 2241, the alien must show that

he has been detained beyond the six-month presumptively reasonable period, and must provide

good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future. *Zadvydas*, 533 U.S. at 701.  Specifically, the Supreme Court determined:

> After this 6–month period, once the alien provides good reason to believe that
> there is no significant likelihood of removal in the reasonably foreseeable future,
> the Government must respond with evidence sufficient to rebut that showing. And
> for detention to remain reasonable, as the period of prior postremoval
> confinement grows, what counts as the "reasonably foreseeable future"
> conversely would have to shrink. This 6–month presumption, of course, does not
> mean that every alien not removed must be released after six months. To the
> contrary, an alien may be held in confinement until it has been determined that
> there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701.

Petitioner argues that the Government bears the sole burden to establish that "there is no

significant likelihood in the foreseeable future" (Docs. 36, 43).  Petitioner maintains that

Respondents are not actively seeking his removal, and that it is unlikely that PRC will issue

travel documents for him.  *Id.*  He contends that ICE's failure to strictly adhere to its internal

procedures regarding Post Order Custody Reviews ("POCRs") demonstrates that the

Government is not seeking his removal.  *Id.*  Petitioner also claims that the forbearance policy

between the Second Circuit and the Government prohibit his removal during the pendency of his

petition for review.  *Id.*

### 1.    Burden of Proof

The Court holds that Petitioner's claim that the Government bears the sole burden to

establish that there is "no significant likelihood of removal in the foreseeable future" is meritless.

Contrary to Petitioner's assertion, the initial burden of proof rests with the alien to provide "good reason to believe" that there is no likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Only if the alien makes the initial showing does the burden shift back to the Government, which "must respond with evidence sufficient to rebut that showing. *Id.* This burden shifting analysis is not only explicitly stated by the Supreme Court, but it also supported by courts in this district. S*ee Menghua Wan v. Crawford*, No. 1:13-cv-1473, 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) ("The alien must show (i) that he is being held beyond the presumptively reasonable six-month period, and (ii) that there is no significant likelihood of removal in the foreseeable future.")); *accord Vasquez-Rivera v. Johnson*, No. 3:15-cv-433, 2015 WL 7283126, at *3 (E.D. Va. Nov. 17, 2015); *Hajbeh v. Loiselle*, 490 F. Supp. 2d 689, 691 (E.D. Va. 2007); *Ali v. Barlow*, 446 F. Supp. 2d 604, 610 (E.D. Va. 2006). Thus, the Court holds that Petitioner bears the initial burden of demonstrating that there is no likelihood of removal in the foreseeable future.

In this case, it is undisputed that Petitioner has been detained longer than the 6-month period contemplated by the Court in *Zadvydas*. The key issue in this case is whether Petitioner can demonstrate that there is no significant likelihood of removal in the foreseeable future.

### 2.     Likelihood of Removal in the Foreseeable Future

The Court finds that Petitioner has failed to create a genuine issue of material fact that there is no significant likelihood he will be removed to PRC in the reasonably foreseeable future. The record demonstrates that the PRC has twice prepared travel documents for Petitioner in the past, and but for Petitioner obstructing two attempted removals, on May 8, 2015 and January 19, 2016, this case would not exist. Furthermore, Petitioner has engaged in numerous litigation tactics intended to stall his eventual removal. Thus, the Court finds that Petitioner has failed to

meet his initial burden under *Zadvydas* to "provide [ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

"Courts have found that removal was not 'reasonably foreseeable' in situations where no country would accept the detainee, the country of origin refused to issue the proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time." *Tshiteya v. Crawford*, No. 1:13cv894, 2013 WL 6635096, \*4 (E.D. Va. Dec. 13, 2013) (citing *Nima v. Ridge*, 286 F.Supp.2d 469, 475 (E.D. Pa. 2003)).

First, Petitioner argues that, "the fact that Respondents have yet to obtain travel documents demonstrates that travel documents will not likely be issued by the Chinese consulate" (Doc. 1). The record, however, demonstrates that travel documents have previously been issued to Petitioner by the PRC Embassy on two occasions, in April 2015 and December 2015 (Docs. 1, 24, 24-4, 24-7, 47, 47-1). In a remarkably similar case, a court within this district recognized, although this first set of travel papers has since expired, "there is no uncertainty about Petitioner's nationality or whether the PRC will accept him if deportation proceedings resume," and "[i]t is reasonable to presume that the PRC will issue renewed documents . . . provided Petitioner remains removable." *See Menghua Wan*, 2014 WL 970180, at \*4; *see also Guangzu v. Decker*, 618 Fed. App'x 26, 27 (2d. Cir. Oct. 15, 2015) ("China has once already issues a travel document for [Petitioner], and there is no reason to believe it would not do so a second time.").

Petitioner has not set forth any credible evidence that PRC will not accept him, that it has refused to issue travel documents for him, or that PRTC was unresponsive in preparing travel documents for Petitioner especially in light of the recent removal attempt that occurred during

the pendency of this action. Furthermore, based upon Respondent's representations at the January 29, 2016 hearing on this motion, Petitioner's travel documents are still valid despite Petitioner's failure to cooperate with removal. Thus, the Court finds that Petitioner's arguments that PRC is unlikely to re-issue travel documents to be futile.

Second, Petitioner maintains that he is not likely to be removed in the reasonably foreseeable future because the Government is not "actively seeking his removal" (Doc 36). Petitioner alleges that ICE's failure to adhere to its internal procedures during his detention demonstrate that Respondents are "dragging their feet as to executing his removal." *Id.* Petitioner relies on an ICE internal memorandum titled, Post Order Custody Reviews Responsibilities and Guidance, which sets forth suggested procedures for conducting POCRs for detained aliens in accordance with federal regulations (Docs. 36; 36-2). This memorandum, Petitioner argues, requires ICE officers to submit a complete travel document to the consulate office within the first 30 days of an alien's detention. *Id.* Because the Government's did not submit Petitioner's travel documents to the PRC until March 9, 2015, more than 30 days after Petitioner was taken into ICE custody on February 3, 2015 (Doc. 36). Petitioner contends that this six-day delay in sending the travel documents demonstrates that "Respondents are not being diligent in their attempts to remove Mr. Lu, and as such, his removal is not reasonably foreseeable." *Id.*

As Respondents aptly point out, any deviations from internal ICE policies and procedures do not assist Petitioner with satisfying his burden under *Zadvydas* (Doc. 45). Although ICE may be slightly delayed in adhering to their internal policies and procedures, "a mere delay does not trigger the inference that an alien will not be removed in the foreseeable future." *Head v. Keiseler*, No. CIV-07-402-F, 2007 WL 4208709, at \*4 (W.D. Okla. 2007); *see also Newell v. Holder*, 983 F.Supp.2d 241, 248 (W.D.N.Y. 2013) ("[T]he mere passage of time [is] insufficient to meet the petitioner's burden to demonstrate no significant likelihood of removal . . ."). The

Court, therefore, finds that the Government's six-day delay in sending travel documents to PRC does not satisfy Petitioner's initial burden of demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future.

Petitioner also relies on a portion of the ICE Detention and Removal Operations Policy and Procedure Manual ("DROPPOM") which identifies standard procedures for conducting POCRs for detained aliens.  In particular, Petitioner points to a section in the DROPPOM which requires ICE to conduct a review of an alien's case if he remains in custody for 180 days or more (Docs. 36; 36-3).  Petitioner argues that he was entitled to a POCR on his 180th day of custody, August 4, 2015, and despite numerous requests to Respondents requesting both Petitioner's release and a 180-day custody redetermination, he received no response.[3]

Respondents acknowledge that a 180-day POCR has not yet taken place (Doc. 45). They, however, argue that granting Petitioner's habeas petition, in its entirety, based on this shortcoming would be an extraordinary outcome given that Petitioner has not set forth any legal support for such an outcome, and this Court agrees. *Id.* In *Idowu v. Ridge*, No. 3:03-cv-1293-R, 2003 WL 21805198 (N.D. Tex. Aug. 4, 2003) the court rejected a similar argument made by petitioner.  The court distinguished petitioner's substantive rights under *Zadvydas* and his procedural rights, the violation of which did not justify granting habeas release. *Id.* at *4-5 ("When no substantive due process violation has been established, release from detention seems an inappropriate remedy for alleged violations of the procedural protections afforded removable aliens such as petitioner"); *accord Rene v. Sec'y of Dep't of Homeland Sec.*, No. 06-0336, 2007

---

[3] Petitioner additionally asserts that he had a telephone conversation with Supervising Deportation Officer ("SDO") Kemerling on or around October 5, 2015, who allegedly stated that Petitioner was "not entitled" to a 180-day determination because of Petitioner's pending PFR before the Second Circuit Court of Appeals, and therefore "ICE was not taking any active steps to remove [Petitioner]" (Docs 36, 36-1). The Court, however, will not entertain this argument as it is undoubtedly being offered to establish the truth of SDO Kemerling's statement which is not appropriate to defeat summary judgment. *Maryland Highways Contractors Ass'n Inc. v. State of Maryland*, 933 F.3d 1246, 1251-52 (4th Cir. 1991) (hearsay evidence cannot be considered on a motion for summary judgment).

WL 708905, at \*5 (D.N.J. Mar. 5, 2007). As in *Idowu* and *Rene*, the Court finds that granting habeas relief for ICE's failure to promptly conduct a 180-day POCR is an extreme, and thus inappropriate remedy in this case.

Third, Petitioner suggests that his removal is not likely in the foreseeable because of his pending PFR before the Second Circuit Court of Appeals (Docs. 1, 36, 43). The forbearance agreement, Petitioner argues, prevents his removal while his PFR is pending before the Court. *Id*. The forbearance policy Petitioner refers to is an agreement between the Second Circuit and the Government which allows for a stay of removal while a "petition" is pending before the Court. *See Efstathiadis v. Holder*, 752 F.3d 591, 599 n.5 (2d. Cir. 2014) ("While a petition is pending in this Court, the Government's forbearance policy assures that the filing of a motion to stay removal, as has been done here, will suffice to prevent removal"); *Decker*, 618 Fed. App'x at 27 ("In accordance with the Government's forbearance policy, [petitioner] may not be removed while his stay motion is pending).

According to various district courts within the Second Circuit, the filing of PFR, accompanied by a motion to stay of removal triggers the application of the forbearance policy between the Government and the Second Circuit under which the Government will not effect removal while a PFR is pending before the Second Circuit.[4] *See e.g.,Persuad v. Holder*, No. 10-cv-6506, 2011 WL 5326465, at \*1 (W.D.N.Y. November 3, 2011) (filing of petition for circuit court review of final order of removal along with motion to stay of removal triggers forbearance policy); *Luna-Aponte v. Holder*, 743 F.Supp.2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, the forbearance policy is "the equivalent of a court-

---

[4] In their Supplemental Filing, Respondent point out that the Government in *Lu II* and *Vasquez*, Petitioner's pending actions in the Second Circuit, clarified that the informal forbearance agreement triggered "only when a petitioner files a motion to stay removal in the Circuit" (Doc. 47, 47-2).

ordered stay of removal"); *Shehnaz v. Ashcroft*, No. 04Civ.2578, 2004 WL 2378371, at \*2 (S.D.N.Y. October 25, 2004) (where circuit court had not yet ruled on alien's request to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy).

In this case, Petitioner filed a Motion to Reopen his case with BIA on May 1, 2015 (Doc 1). One week later, Petitioner filed a Motion to Stay his removal with the BIA. *Id.* On June 5, 2015, the BIA denied both Petitioner's Motion to Reopen and Motion to Stay. *Id.* Petitioner then appealed the BIA decision to the Second Circuit Court of Appeals. *Id.* Seven months later and after his second removal attempt, Petitioner filed a Motion to Stay on January 19, 2016 (Docs. 46, 47). On January 28, 2016, the Second Circuit denied Petitioner's PFR and Motion to Stay (Docs. 47, 47-5). Given the recent disposition of Petitioner's PFR and Motion to Stay, the Court finds Petitioner's argument regarding the applicability of the Second Circuit's forbearance policy to his case to be moot.

Furthermore, the Court finds that Petitioner's own actions have contributed significantly to the delay in his removal and continued detention. Petitioner was initially set to be removed from the United States just ninety-four days after he was released into the custody of ICE. Had Petitioner not gotten off the airplane that was en route to PRC, this action would not exist. As the Respondents correctly point out courts across the country have consistently held that this sort of blatant attempt by an alien to obstruct his removal warrants no habeas relief. *See, e.g.*, *Linares v. Dep't of Homeland Sec.*, 598 F. App'x 885, 887 (11th Cir. 2015) (affirming dismissal of a habeas petition where the alien "refus[ed] to board a plane" and "fail[ed] to exit transport at the airport"); *Patel v. Cole*, No. L:14-cv-00779, 2015 WL 893030, at \*2 (W.D. La. Feb. 27, 2015) (denying a habeas petition where the alien twice "refused to get on the plane"); *Kallon v. Holder*, No. 14-651, 2014 WL 5343307, at \*4 (D.N.J. Oct. 20, 2014) (denying a habeas petition

where "on two separate occasions," the alien "refused to board the plane"); *Kirabira v. Mukasey*, No. 3:08-cv-0921, 2008 WL 4945642, at *1 (N.D. Tex. Nov. 18, 2008 (denying a habeas petition where due to the alien's "disruptive behavior . . . the flight crew did not permit him to board the plane"); *see also Djokic v. Holder*, No. 11-cv-14792, 2011 WL 5599409, at *2 (E.D. Mich. Nov. 17, 2011) (denying a motion for immediate hearing because habeas relief was unlikely available for the alien who on two separate removal attempts caused "multiple disturbances" onboard the plane such that the airline took her off the flight).

Petitioner has also actively sought to delay his removal by filing multiple actions in administrative and federal courts, thereby adding to his ongoing detention. On May 1, 2015—just a few weeks after the PRC Embassy issued travel papers for Petitioner and his removal date was set—Petitioner filed his Motion to Reopen with the BIA in an attempt to delay or prevent his removal (Doc. 1-8). He filed the Motion to Reopen despite having agreed in his 2014 Plea Agreement not to contest his removal not to contest his removal (Doc. 24-5). He then appealed the BIA's denial of the Motion to Reopen to the Second Circuit, where his PFR is currently pending (Doc. 1-13). Additionally, Petitioner filed a class complaint in the Southern District of New York attacking the way his attempted removal was handled. *Vasquez*, 1:15cv3946 (S.D.N.Y. filed May 22, 2015). In sum, the Court finds that Petitioner's continued detention is a result of his own actions. Thus, the Court holds that Petitioner has not established his initial burden of demonstrating there is no significant likelihood of removal in the reasonably foreseeable future. *See, e.g., Linares*, 598 F. App'x at 887 n.2 (affirming dismissal of a habeas petition where the alien "used every litigation tool at his disposal to prevent his removal from the United States" by filing "numerous actions" across the country); *Mattete v. Loiselle*, No. 2:06cv652, 2007 WL 3223304, at *6 (E.D. Va. Oct. 26, 2007) (stating that the alien's "pursuit of

every available legal avenue to remain in the United States, taken to the point of noncompliance with the removal process" supports continued detention).

### III. CONCLUSION

The Court **GRANTS** Respondents' Motions for Summary Judgment because Petitioner has not established a genuine issue of material fact that his continued detention pending his removal violates due process under *Zadvydas*. Specifically, Petitioner is not able to satisfy his burden that there is there is "no significant likelihood of removal in the foreseeable future." Additionally, the record reflects that Petitioner's own actions have contributed significantly to his continued detention.

Accordingly, **IT IS HEREBY ORDERED** that Respondents Loretta Lynch, Jeh Johnson, Michael Koransky, Matthew Munroe, James Maddox, David M. Griddle and John R. Kuplinski's ("Respondents") Motions for Summary Judgment (Docs. 23, 40) are **GRANTED;**

**IT IS FURTHER ORDERED** that Petitioner Ming Hui Ling's Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief (Doc. 1) is **DENIED**, and this action is **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

ENTERED this 29th day of January, 2016.

Alexandria, Virginia
1/ 29/ 2016

_____/s/_____

Gerald Bruce Lee
United States District Judge